Filed 5/19/21  P. v. Sanchez CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ANGEL ANTHONY SANCHEZ,<br><br>    Defendant and Appellant. | 2d Crim. No. B305319<br>(Super. Ct. No. 18CR08552)<br>(Santa Barbara County) |

Angel Anthony Sanchez appeals from the judgment entered after a jury had convicted him of kidnapping for the purpose of committing rape (count 1 –  Pen. Code, § 209, subd. (b)(1));[1] assault with intent to commit rape (count 2 – § 220, subd. (a)(1)); carrying a concealed dirk or dagger (count 3 – § 21310); resisting or obstructing a peace officer, a misdemeanor (count 4 –  § 148, subd. (a)(1)); and attempting to dissuade a witness by the use or

---

[1] Unless otherwise stated, all statutory references are to the Penal Code.

threatened use of force or violence (count 5 – § 136.1, subds. (b)(1), (c)(1)).  The jury found true an allegation that appellant had been armed with a deadly weapon during the commission of assault with intent to commit rape.  (§ 12022.3, subd. (b).)  The trial court found true two prior serious felony convictions (§ 667, subd. (a)(1)), one prior prison term (§ 667.5, subd. (b)), and two prior "strikes" within the meaning of California's "Three Strikes" law.  (§§ 667, subds. (b)-(j); 1170.12, subds. (a)-(d).)  The court "stayed" the prior prison term.  It sentenced appellant to prison for a determinate term of 32 months "followed by [an indeterminate term of] 75 years to life."

Appellant contends that the trial court (1) abused its discretion in admitting evidence of a prior uncharged sexual offense, (2) erroneously instructed the jury as to the uncharged offense, and (3) violated his constitutional rights by imposing a $5,000 restitution fine without conducting a hearing on his ability to pay the fine.  We affirm.

*Facts Underlying Charged Sexual*
*Offenses and Prior Uncharged Offense*

The charged sexual offenses occurred in September 2018 when Jane Doe 1 (Doe 1) was 19 years old.  At approximately 11:00 p.m., she was walking to an ATM to get money.  Appellant, who was riding a bicycle, approached her and started asking her questions.  Doe 1 "cussed at him" and "told him to leave [her] alone."

Appellant pedaled his bike so that he was positioned in front of Doe 1, blocking her path.  Appellant grabbed her wrist, took her cellphone, and threw it into a parking lot.  Doe 1 pushed appellant's bicycle, "and he fell down with it."  Doe 1 tripped and fell.  Appellant "pulled [her] up and told [her] that if [she] didn't

2

cooperate, he'd hurt [her]." He said he had a weapon "and lifted up his sweater so [she] could see . . . the tip of a knife or some type of sharp object."

Appellant pushed Doe 1 to the ground and dragged her into the parking lot, away from the streetlights. "[I]t was really hard to see anything." Appellant got down on his knees in front of Doe 1. "He was attempting to grab [her] breasts." While Doe 1 was still on the ground, appellant pulled her shorts and panties down below her knees. He was positioned between her legs and "was trying to touch [her] vagina." At the same time, he "was unbuckling his belt."

Doe 1 "was just screaming as much as [she] could." Appellant suddenly got up and fled on his bicycle. Doe 1 saw the headlights of a vehicle. The driver had heard her screams. He drove his pickup truck into the parking lot because he assumed 'someone's in trouble over there.'"

Jane Doe 2 (Doe 2) testified to an uncharged rape committed by appellant in March 2009 when she was 16 years old. Doe 2 went to a friend's house. The friend introduced Doe 2 to her brother, appellant. While the friend went to a store, Doe 2 remained inside the house with appellant. Doe 2 was in the living room when appellant grabbed her from behind. She broke free, but appellant grabbed her again and pulled her into the bedroom. He pulled down her pants and forcibly had sexual intercourse with her until he ejaculated. Doe 2 fought with him to no avail. Her wrists were bruised.

Doe 2 immediately reported the incident to the police. Appellant was "detained." She went to court but refused to testify against him. Because of her refusal, the case was dismissed.

The prosecutor asked Doe 2 why she had decided to testify against appellant in the present case. Doe 2 responded, "I'm here so I can get justice for myself and for the girl [Doe 1], that it's just not okay what he's doing."

*No Abuse of Discretion in Admitting*
*Evidence of Uncharged Sexual Offense*

The trial court admitted evidence of the uncharged sexual offense pursuant to Evidence Code sections 1101 and 1108 (section 1101 and section 1108). The court believed "the [section] 1101 argument is less compelling than the [section] 1108 theory of admissibility." "'Evidence Code section 1101, subdivision (a) sets forth the . . . rule that propensity evidence is not admissible to prove a defendant's conduct on a specific occasion.' [Citation.] 'At the same time, "other crimes" evidence is admissible under Evidence Code section 1101, subdivision (b) "when offered as evidence of a defendant's motive, common scheme or plan, preparation, intent, knowledge, identity, or absence of mistake or accident in the charged crimes."' [Citation.] 'In this inquiry, the degree of similarity of criminal acts is often a key factor . . . .'" (*People v. Erskine* (2019) 7 Cal.5th 279, 295 (*Erskine*).)

"Section 1108 'carves out an exception to section 1101.' [Citation.] Section 1108, subdivision (a) provides that '[i]n a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to [Evidence Code] [s]ection 352.' [Citation.] Section 352 articulates the general rule that '[t]he court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time

4

or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.'" (*Erskine*, *supra*, 7 Cal.5th at p. 295-296.)

Where "a defendant is accused of a sexual offense, Evidence Code section 1108 authorizes the admission of evidence of a prior sexual offense to establish the defendant's propensity to commit a sexual offense, subject to exclusion under Evidence Code section 352." (*People v. Lewis* (2009) 46 Cal.4th 1255, 1286 (*Lewis*).) "[C]ourts 'must engage in a careful weighing process under [Evidence Code] section 352' when admitting propensity evidence. [Citation.] 'Rather than admit or exclude every sex offense a defendant commits, trial judges must consider such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense.'" (*People v. Baker* (2021) 10 Cal.5th 1044, 1098.)

In reviewing the trial court's admission of evidence under section 1108, we apply the abuse of discretion standard. (*Lewis*, *supra*, 46 Cal.4th at p.1286.) "'Under the abuse of discretion standard, "a trial court's ruling will not be disturbed, and reversal is not required, unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice . . . ."'" (*Ibid*.) Appellant contends that the trial court abused its discretion

because "Doe 2's testimony was highly inflammatory and its probative value was reduced by the crime's remoteness, the witness's lack of credibility, and the factual dissimilarities between the two incidents."

There is a "distinction between admissibility under Evidence Code section 1101(b), which requires a sufficient degree of similarity between charged and uncharged offenses, and admissibility under Evidence Code section 1108, which does not. . . . [A]lthough lack of similarity is relevant to the court's decision whether to exclude Evidence Code section 1108 propensity evidence as more prejudicial than probative, that factor is not dispositive." (*People v. Merriman* (2014) 60 Cal.4th 1, 41-42 (*Merriman*).) The Doe 1 sexual assault and the prior Doe 2 rape are not dissimilar. They both involved sexual assaults on teenage, vulnerable females. On both occasions appellant pulled or dragged the victim to another location. The trial court noted, "[T]here was . . . significant movement in both cases, and that, I think, is an important distinction because not all . . . sexual assaults occur with movement of the alleged victim."

We reject appellant's claim that Doe 2 lacked "credibility." Appellant fails to explain why she lacked credibility.

The Doe 2 rape was committed approximately nine years before the Doe 1 sexual assault. In view of the similarities between the two offenses and the high probative value of the prior Doe 2 rape, it was not unduly remote. In *People v. Branch* (2001) 91 Cal.App.4th 274, the court upheld the admission of prior uncharged sexual offenses despite a 30-year gap between the charged and uncharged offenses. The court concluded, "[T]he substantial similarities between the prior and the charged offenses balance out the remoteness of the prior offenses." (*Id.* at

6

p. 285.)  The court noted, "No specific time limits have been established for determining when an uncharged offense is so remote as to be inadmissible." (*Id*. at p. 284.)

Appellant was not convicted of the Doe 2 rape.  "[T]he absence of a conviction would increase the prejudicial impact of the evidence [of the Doe 2 rape] because the jury might be tempted to convict [appellant] of [the charged offense] as punishment for having escaped criminal liability for [the Doe 2 rape].  [Citations.]  [But] [t]his circumstance does not tip the balance against" the admission of the prior uncharged offense. (*Merriman*, *supra*, 60 Cal.4th at p. 42.)

It is troubling that Doe 2 testified, "I'm here so *I can get justice for myself* and for the girl [Doe 1], that it's just not okay what he's doing." (Italics added.)  It was not the jury's function to do justice for Doe 2.  But this testimony came in after the trial court had ruled that evidence of the Doe 2 rape should not be excluded under Evidence Code section 352.  There was no abuse of discretion based on the subsequent, unanticipated testimony of Doe 2.  "To determine whether the court abused its discretion . . . , we examine the record before the trial court when it ruled." (*People v. Price* (1991) 1 Cal.4th 324, 388.)

Appellant "faces a presumption favoring the admissibility of sexual offense evidence under Evidence Code section 1108 to show propensity to commit the charged offense.  [Citations.]  [¶] We conclude that [appellant] has failed to carry his burden of rebutting the strong presumption of admissibility of the [prior uncharged rape] under Evidence Code section 1108." (*Merriman*, *supra*, 60 Cal.4th at p. 42.)  Because the evidence was admissible under section 1108, "[w]e need not resolve . . . whether the evidence [of the prior rape of Doe 2] was sufficiently similar to

7

the evidence underlying the [Doe 1 sexual assault charge] to permit admission under Evidence Code section 1101(b) . . . ." (*Merriman, supra,* at p. 40.)

*Jury Instruction*

Appellant argues that the trial court erroneously gave CALCRIM No. 375, which instructed the jury that it could consider the prior uncharged rape of Doe 2 to show appellant's intent and motive as to the charged sexual offenses. The instruction was given pursuant to section 1101, subdivision (b). Appellant maintains that CALCRIM No. 375 was "inapplicable" because "intent and motive were *never* challenged at trial . . . . The sole dispute was whether or not appellant was [Doe 1's attacker]." No error occurred because intent was an element of the charged sexual offenses. "'[A] fact—like defendant's intent—generally becomes "disputed" when it is raised by a plea of not guilty or a denial of an allegation. . . . Such a fact remains "disputed" until it is resolved.'" (*People v. Scott* (2011) 52 Cal.4th 452, 471.) Appellant's motive was relevant to show his intent. (See *People v. Thompson* (1980) 27 Cal.3d 303, 319, fn. 23, disapproved on other grounds in *Scott, supra,* at pp. 470-471 ["several prior dissimilar crimes were admissible to prove intent to kill . . . by establishing the intermediate fact of motive"].) Even if CALCRIM No. 375 had been erroneously given, the error would have been harmless because evidence of the prior rape was admissible to show appellant's propensity to commit the charged sexual offenses.

Appellant claims that the trial court's instructions "allowed the prosecution to use Jane Doe 2's testimony to improperly bolster its case as propensity evidence, . . . as instructed by CALCRIM [No.] 1191A, which stated . . . 'If you decide that the

defendant committed the uncharged offense, you may . . . conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses . . . .'" Instructing the jury pursuant to CALCRIM No. 1191A was not improper; it was authorized by section 1108.

*Imposition of Restitution Fine Absent a*
*Hearing to Determine Appellant's Ability to Pay*

Based on *People v. Dueñas* (2019) 30 Cal.App.5th 1157, appellant claims that the trial court erroneously imposed a section 1202.4 restitution fine of $5,000 without conducting a hearing to determine his ability to pay the fine. "*Dueñas* held that it violates due process under the federal and state Constitutions to impose . . . court operations and facilities fees without first determining the convicted defendant's ability to pay them. [Citation.] In addition, 'to avoid serious constitutional questions' raised by the statutory restitution scheme, [*Dueñas* held that] the [trial] court must stay execution of the mandatory restitution fine unless the court determines that the defendant has the ability to pay it." (*People v. Taylor* (2019) 43 Cal.App.5th 390, 397 (*Taylor*).) [2]

_____

[2] "Since *Dueñas*, some courts have criticized *Dueñas*'s due process analysis and have declined to follow it. . . . [¶] The California Supreme Court will resolve the split in authority, having granted review of the issues presented by *Dueñas* in [*People v. Kopp* (2019) 38 Cal.App.5th 47, review granted Nov. 13, 2019, S257844]. The [Supreme] [C]ourt will decide whether courts must 'consider a defendant's ability to pay before imposing or executing fines, fees, and assessments,' and if so, 'which party bears the burden of proof regarding defendant's inability to pay.'" (*Taylor, supra,* 43 Cal.App.5th at p. 398.)

Appellant forfeited his *Dueñas* claim because in the trial court he failed to request a hearing on his ability to pay. There was no excuse for this failure. *Dueñas* was decided more than one year before appellant's sentencing date of February 27, 2020. Irrespective of *Dueñas*, the trial court was authorized to consider appellant's ability to pay because the restitution fine exceeded the $300 minimum (§ 1202.4, subd. (c)). (See *People v. Oliver* (2020) 54 Cal.App.5th 1084, 1102 ["in *Taylor*[, *supra*, 43 Cal.App.5th at pp. 399-400], we concluded a defendant forfeited his claim of *Dueñas* error about a *maximum* $10,000 restitution fine by not objecting because, even before *Dueñas* was decided, the trial court had the express authority to consider the defendant's ability to pay as one factor when deciding whether to impose a fine above the [$300] mandatory minimum"].)

*Disposition*

The judgment is affirmed.

NOT TO BE PUBLISHED.

YEGAN, J.

We concur:

GILBERT, P. J.

PERREN, J.

10

Von Deroian, Judge

Superior Court County of Santa Barbara

_____

Gusdorff Law and Janet Gusdorff, under appointment by the Court of Appeal for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, Ryan M. Smith, Deputy Attorney General, for Plaintiff and Respondent.